UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>   v.<br><br>CELIA NIPPER, et al.,<br><br>   Defendants. | Case No. 20-cv-00258-HSG<br><br>**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 35 |

Pending before the Court is Plaintiff United States of America's ("Plaintiff") motion for default judgment against Defendant Celia Nipper ("C. Nipper" or "Defendant"). Dkt. No. 35 ("Mot."). The Court took the motion under submission on June 12, 2020. *See* Dkt. No. 42. After careful consideration, the Court **GRANTS** the motion.

## I.  BACKGROUND

On July 19, 2009, C. Nipper acquired real property located at 1965 Keswick Lane, Concord, California ("Property"), evidenced by a grant deed recorded by the Contra Costa County Recorder's Office. Dkt. No. 1 ("Compl.") ¶¶ 14-19. On February 16, 2016, C. Nipper was arrested on federal charges of wire fraud, bank fraud, and filing of false tax returns. Mot. at 2. On May 8, 2018, the Court sentenced Defendant to a prison term of 51 months, and ordered restitution of $2,362,469.00 to Marketlinx, Inc. and the Internal Revenue Service. *See United States v. Celia Nipper*, Case No. 16-CR-0043, Dkt. No. 77 (N.D. Cal.). Plaintiff alleges that in the two years between her arrest and her sentencing, C. Nipper transferred her interest in the Property to her daughter, Kasey Nipper ("K. Nipper"), in two different transactions on March 8, 2017 and March 14, 2018 via K. Nipper's alter ego, Peace House, Inc. Mot. at 2-3.

On January 13, 2020, pursuant to its authority to enforce restitution judgments under 18 U.S.C. § 3664(m)(1)(A)(i) and the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, *et*

*seq.*, Plaintiff filed its complaint seeking the avoidance of fraudulent transfers of real property pursuant to 28 U.S.C. Section 3304(b). Compl. at 4.

On February 12, 2020, copies of the summons (Dkt. No. 7) and complaint were personally served on C. Nipper. Dkt. No. 15. Pursuant to the summons and Fed. R. Civ. P. 12(a)(1)(A)(i), Defendant's response was due on March 4, 2020. *See* Declaration of Manik Bowie, Dkt. No. 20-2 at 2. On March 12, 2020, the Clerk of the Court issued an entry of default against C. Nipper. Dkt. No. 23. On May 13, 2020, Plaintiff filed this motion for default judgment.[1] C. Nipper was served with the motion by U.S. Mail addressed to her at FCI Dublin. Dkt. No. 36. On July 10, 2020, the Court entered an order directing Plaintiff to file supplemental briefing "describing: 1) the steps taken to effectuate service on [C. Nipper] while incarcerated, 2) authority reflecting the adequacy of that service, and 3) the Court's jurisdiction over [C. Nipper]." Dkt No. 43. On July 21, 2020, Plaintiff filed its supplemental brief. Dkt. No. 44. On July 22, 2020, copies of the supplemental brief were personally served on C. Nipper. Dkt. No. 45.

## II.     LEGAL STANDARD

After entry of a default by the clerk, a party may move for default judgment. *See* Fed. R. Civ. P. 55. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). As a preliminary matter, a district court must confirm that it has subject matter jurisdiction over the action, personal jurisdiction over the defendant, and that service of process was adequate. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999); *Disney Enters., Inc. v. Vuong Tran*, No. 12-5030 SC, 2013 WL 1832563, at *1 (N.D. Cal. May 1, 2013). After finding these threshold matters met, a court next considers whether the following factors ("the *Eitel* factors") support an entry of default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

---

[1] Plaintiff's earlier motion for default judgment as to the other two Defendants, Kasey Nipper and Peace House, Inc., was granted by consent decree on May 27, 2020. Dkt. No. 40; *see also* Dkt. No. 19.

2

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

In considering these factors, a court takes all factual allegations in a plaintiff's complaint as true, except for those relating to damages. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). And relief granted under a default judgment is always limited by Federal Rule of Civil Procedure 54(c), in that the judgment "shall not be different in kind or exceed in amount that prayed for in the [complaint]."

### III. DISCUSSION

#### A. Jurisdiction

Before entering default judgment, the Court must have subject matter jurisdiction over the action, and personal jurisdiction over the defendant. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). The Court will address each issue in turn.

##### i. Subject Matter Jurisdiction

Congress broadly authorizes the federal courts to exercise subject matter jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. District courts "shall have original jurisdiction of all civil actions, suits, or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress," unless otherwise provided by Congress. 28 U.S.C. § 1345.

Specifically, Plaintiff filed this action against C. Nipper under 28 U.S.C. § 3304 to recover property she fraudulently transferred to her daughter to avoid paying restitution. Compl. at 1. Plaintiff is authorized under federal law to employ civil process to collect restitution in favor of private parties, such as C. Nipper's victims. 18 U.S.C.§ 3612(c), 28 U.S.C. § 3664(m). Therefore, the Court has subject matter jurisdiction over this action.

##### ii. Personal Jurisdiction

Courts have recognized two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773, 1780 (2017) (citing *Goodyear*, 564 U.S. at 924) (internal quotation marks omitted).

3

In determining an individual's domicile, a number of factors are considered, including current residence, location of property, and location of spouse and family. *Lew v. Moss*, 797 F.2d 747, 749-50 (9th Cir. 1986). "[T]he domicile of [a] prisoner before he was imprisoned is presumed to remain his domicile while he is in prison." *Denlinger v. Brennan*, 87 F.3d 214, 216 (7th Cir. 1996) (quoting *Sullivan v. Freeman*, 944 F.2d 334, 337 (7th Cir. 1991)); *see also United States v. Arango*, 670 F.3d 988, 998 (9th Cir. 2012) (adopting a rebuttable presumption that, for the purposes of the Immigration and Nationality Act, "an incarcerated individual retains residence in the judicial district where he lived prior to incarceration").

Here, C. Nipper resided in California before she was incarcerated. Defendant was served where she presently resides—at FCI Dublin, located in Alameda County, California. *See* Dkt. No. 14-3 at 11, 19. Post-incarceration, C. Nipper stated that she intends to remain in California. *See* Case No. 16-cr-0043, Dkt. No. 82 at 15. Second, the subject of this action is C. Nipper's fraudulent transfer of real property located in California. Third, the Court recommended at sentencing that she "be designated to FCI Dublin to facilitate family visits." Case No. 16-cr-0043, Dkt. No. 77. Taken together, these factors indicate that this Court has general jurisdiction over the Defendant.

### B.  Adequacy of Service

The Court next considers whether procedural prerequisites, including adequate service of process, have been met. *See, e.g.*, *Ebates Inc. v. Cashbag.co.za*, No. 18-CV-02884-EDL, 2018 WL 6816113, at *5 (N.D. Cal. Oct. 30, 2018), *report and recommendation adopted*, No. C 18-2884 SBA, 2019 WL 1095820 (N.D. Cal. Jan. 14, 2019) (citing *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002)). Plaintiff's effort must "be 'reasonably calculated' to apprise a party of the pendency" of an action. *Dusenbery v. United States*, 534 U.S. 161, 170 (2002). Plaintiff is not required to make special efforts to "assure that a particular piece of mail reaches a particular individual who is in one way or another in the custody of the Government." *Id*.

As discussed below, the Court finds that Plaintiff's efforts to provide notice to C. Nipper in accordance with the Federal Rules of Civil Procedure, and the Bureau of Prisons ("BOP") mail

procedure, satisfies due process. *See id.* at 168-69 (finding that Government's notice was adequate when it followed the BOP mail procedure described in the record for mail distribution).

### i. Plaintiff Personally Served C. Nipper with the Complaint in Accordance with Federal Rule of Civil Procedure 4(3)(2)

An individual who is not a minor, incompetent person, or person whose waiver has been filed, may be served a complaint by:

> (A) delivering a copy of the summons and of the complaint to the individual personally;
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e)(2).

Here, Plaintiff provided the U.S. Marshals Service a copy of the summons, complaint and other documents to deliver to C. Nipper personally. Dkt. No. 44 at 3. The U.S. Marshals Service delivered the documents to FCI Dublin on February 12, 2020, as indicated by the Process Receipt and Return. Dkt. No. 15. The Process Receipt and Return indicates the documents were received by "J. Golden (LT.)." *Id.* Joseph Golden is a Lieutenant employed with BOP and assigned to FCI Dublin. *See* Declaration of Lt. Golden, Dkt. No. 44-1 ¶¶ 2-3 ("Golden Decl."). Lt. Golden stated in his declaration that he received the documents from the Deputy U.S. Marshal, and personally delivered them to C. Nipper on the same day. *Id.* ¶¶ 4-6. Therefore, the Court is satisfied that C. Nipper received proper notice of the complaint because the Government personally served Defendant with the summons and complaint.

### ii. Plaintiff Served C. Nipper with the Motion via U.S. Mail in Accordance with Federal Rule of Civil Procedure 5(b)(2)(C)

A motion filed after the complaint may be served by mailing it to the person's last known address. Fed. R. Civ. P. 5(b)(2)(C). When done in this manner, service is complete upon mailing. *Id.* Persons sending mail to individuals incarcerated at FCI Dublin are instructed to include the inmate's name and register number, and to address mail to FCI Dublin's address of 5701 8th Street—Camp Parks, Dublin, CA 94568. Dkt. No. 44 at 3.

1  Here, Plaintiff mailed the motion to Plaintiff's last known address, which is her place of
2  incarceration at FCI Dublin. As indicated on the proof of service, the delivery address included C.
3  Nipper's name and register number. Dkt. No. 36. At FCI Dublin, general incoming mail is
4  received, screened for security purposes, and distributed to inmates, typically on a daily basis. *See*
5  Golden Decl. ¶¶ 7-8. By following BOP's procedures, Plaintiff has complied with the Federal
6  Rules of Civil Procedure in a manner that is reasonably calculated to apprise C. Nipper of the
7  pending action, satisfying due process requirements.

\*\*\*

9  Plaintiff personally served C. Nipper with the summons and complaint, and mailed her the
10  motion, in accordance with the Federal Rules of Civil Procedure and BOP mail procedure.
11  Therefore the Court finds that service of process was adequate.

### C. *Eitel* Factors

Once the Court finds that it has jurisdiction and notice was sufficient, the Court must then evaluate the merits of the default judgment request based on the seven *Eitel* factors. *See Eitel*, 782 F.2d at 1471–72.

#### i. First Factor: Possibility of Prejudice to the Plaintiff

First, the Court must consider the possibility of prejudice to Plaintiff. *Id.* at 1471. A plaintiff may be prejudiced when, in the absence of a default judgment, plaintiff would be left with no "other recourse for recovery." *PepsiCo*, 238 F. Supp. 2d at 1177. Courts have found prejudice when a defendant has failed to appear or defend against a suit, and plaintiff could not otherwise seek relief. *See, e.g.*, *id.*; *Fulton v. Bank of Am., N.A.*, No. 2:16-cv-04870, 2016 WL 7156440, at *3 (C.D. Cal. Dec. 6, 2016).

Plaintiff here will be prejudiced absent entry of default judgment because Plaintiff will have no recourse to recover the Property and apply its proceeds to the outstanding judgment. *See, e.g.*, *Willamette Green Innovation Ctr., LLC v. Quartis Capital Partners*, No. 13-cv-848-JCS, 2014 WL 5281039, at *6 (N.D. Cal. 2014) ("Denying a plaintiff a means of recourse is by itself sufficient to meet the burden posed by this factor."). The Court finds that the first *Eitel* factor favors entry of default judgment.

6

### ii. Second and Third Factors: Merits of Plaintiff's Substantive Claim, and Sufficiency of the Complaint

The second and third *Eitel* factors consider the merits and sufficiency of Plaintiff's claims. These two factors are often analyzed together, and require courts to consider whether a plaintiff has "state[d] a claim on which [it] may recover." *PepsiCo*, 238 F. Supp. 2d at 1175. With the exception of facts relating to damages, courts must take as true all other factual allegations pled in the complaint. *TeleVideo Sys.*, 826 F.2d at 917–18. Of all the *Eitel* factors, courts often consider the second and third factors to be "the most important." *Sanrio, Inc. v. Jay Yoon*, No. 5:10-CV-05930 EJD, 2012 WL 610451, at *4 (N.D. Cal. Feb. 24, 2012).

Plaintiff has pled sufficient facts to support its claims that C. Nipper transferred the Property to Peace House and/or K. Nipper "with actual intent to hinder, delay, or defraud a creditor" or "without receiving a reasonably equivalent value in exchange for the transfer." *See* 28 U.S.C. § 3304(b). In its first cause of action, Plaintiff alleged that "one year after her arrest," C. Nipper "transferred property" by granting a deed of trust in favor of "her insider . . . K. Nipper's alter ego Peace House." Compl. ¶ 23(a), (c); 28 U.S.C. § 3304(b)(2)(A). Plaintiff alleged that C. Nipper "concealed the transfer by using the name of K. Nipper's corporation and alter ego Peace House." Compl. ¶ 23(b); 28 U.S.C. § 3304(b)(2)(C). Plaintiff also alleged that C. Nipper received no consideration for the "gratuitous[] . . . $500,000" transfer. Compl. ¶ 23(d); 28 U.S.C. § 3304(b)(2)(H). Lastly, Plaintiff alleged that C. Nipper attempted to "defraud" Plaintiff by keeping assets from Plaintiff's reach, "bec[o]m[ing] insolvent as a result of the transfer, as she had no significant assets approximately six months later." Compl. ¶ 23, 23(e); 28 U.S.C. § 3304(a)(1)(B).

Likewise, in the second cause of action, Plaintiff alleged that six months after her guilty plea—and two weeks prior to her sentencing—C. Nipper "transferred" title to the Property to "her insider . . . K. Nipper's alter ego Peace House." Compl. ¶ 26(a), (c); 28 U.S.C. § 3304(b)(2)(A). Plaintiff alleged that C. Nipper "concealed the transfer by using the name of K. Nipper's corporation and alter ego Peace House." Compl. ¶ 26(b); 28 U.S.C. § 3304(b)(2)(C). Plaintiff also alleged that C. Nipper received consideration of $433,000, "approximately $500,000 below market value." Compl. ¶ 26(d); Mot. at 5; 28 U.S.C. ¶ 3304(b)(2)(H). And Plaintiff alleged that

C. Nipper attempted to "defraud" Plaintiff by keeping assets from Plaintiff's reach, "bec[o]m[ing] insolvent as a result of the transfer, as she had no significant assets at approximately the time of the transfer." Compl. ¶ 26, 26(e); 28 U.S.C. § 3304(a)(1)(B).

Reviewing these allegations, the Court finds that Plaintiff has alleged sufficient facts to state a claim under 28 U.S.C. § 3304(b). Accordingly, the Court finds that the second and third *Eitel* factors favor entry of default judgment.

### iii. Fourth Factor: Sum of Money at Stake

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant[s'] conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. Here, Plaintiff does not seek a monetary judgment in this matter, and Plaintiff's request for a declaratory judgment is tailored to redress C. Nipper's misconduct. *See* Mot. at 6-7; *see also PepsiCo*, 238 F. Supp. 2d at 1177; *United States v. Malinowski*, No. 11-cv-1187 JAM JFM, 2011 WL 6141075, *4 (E.D. Cal. 2011). C. Nipper's conduct is "serious," as she engaged in deceitful conduct to evade her creditors. *See PepsiCo*, 238 F. Supp. 2d at 1176. Therefore, the fourth *Eitel* factor favors entry of default judgment.

### iv. Fifth Factor: Possibility of a Dispute Concerning Material Facts

The fifth *Eitel* factor examines the "possibility of dispute as to any material facts in the case." *Id.* at 1177. "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1997). As discussed above, Plaintiff has sufficiently pled sufficient facts to state a claim under 28 U.S.C. § 3304(b), and C. Nipper has failed to raise any dispute of material fact. Therefore, the fifth *Eitel* factor favors entry of default judgment.

### v. Sixth Factor: Whether the Default Was Due to Excusable Neglect

The sixth *Eitel* factor considers the possibility that Defendant's default resulted from excusable neglect. *PepsiCo*, 238 F. Supp. 2d at 1177. Courts have found that where defendant was "properly served with the complaint, the notice of entry of default, as well as the paper in

support of the [default judgment] motion," there is no evidence of excusable neglect. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

There is no evidence that C. Nipper's failure to respond was the result of excusable neglect. Defendant was properly and timely served, and apparently chose not to respond. Therefore, the sixth *Eitel* factor favors entry of default judgment.

      **vi.**    **Seventh Factor: Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits**

The seventh *Eitel* factor emphasizes that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F. 2d at 1472. While this preference does not preclude a court from granting default judgment, *see PepsiCo*, 238 F. Supp. 2d at 1177, the general rule is that "default judgments are ordinarily disfavored." *Eitel*, 782 F. 2d at 1472. Deciding the case on the merits is nearly impossible where a party refuses to participate. This factor thus weighs against, but does not preclude, entry of default judgment.

\* \* \*

In sum, the majority of the *Eitel* factors favor default judgment against Defendant.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for default judgment against Defendant Celia Nipper. The Court enters judgment as follows:

1. The deed of trust on real property located at 1965 Keswick Lane, Concord, California (APN: 147-194-037-7 Lot 39), executed by Celia Nipper and for the benefit of Peace House, Inc., recording March 8, 2017, is fraudulent and void;

2. The transfer of title of real property located at 1965 Keswick Lane, Concord, California (APN: 147-194-037-7 Lot 39), from Celia Nipper to Peace House, Inc., recorded March 14, 2018, is fraudulent and void; and

//
//
//
//

3. Title to real property located at 1965 Keswick Lane, Concord, California (APN: 147-194-037-7 Lot 39) is hereby vested in the sole name of Celia Nipper.

The Clerk is directed to close the case.

**IT IS SO ORDERED.**

Dated:   8/12/2020

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge